## T. M. KING v. THE STATE.

### No. 7637.   Decided December 19, 1923.

**Embezzlement—Indictment—Cotton Weigher's Receipt.**

> The indictment referring to a receipt unknown to the law and which is not set out, and having failed to allege that said receipt was sold by defendant and the proceeds arising from its sale appropriated by him; and having failed to allege that the ownership of the cotton referred to was in the bank and that the bank was entitled to the proceeds of the cotton sold by the defendant, the same was insufficient to charge a violation of the law.

Appeal from the District Court of Nacogdoches.   Tried below before the Honorable L. D. Guinn.

Appeal from a conviction of embezzlement; penalty two years imprisonment in the penitentiary.

The opinion states the case.

*Seale & Denman,* and *Baskett & De Lee,* for appellant.

*Tom Garrard and Grover C. Morris,* Assistants Attorney General, *W. B. Bates,* District Attorney, and *S. M. Adams,* Special Prosecutor, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Nacogdoches county of embezzlement, and his punishment fixed at two years in the penitentiary.

Appellant's motion to quash the indictment was overruled.   The indictment charges that appellant was indebted to a bank and had given notes for said indebtedness, which notes were secured by "three bales of lint cotton weighed by Parrott, a public weigher, . . . being public weigher's receipts Nos. 1815-7, . . . that said receipts were by agreement of the said bank and King delivered to said bank as collateral for said above described notes and attached to said notes and held by said bank as such, and when sold proceeds to be applied to payment of said notes that after the hypothecation of said receipts to the said bank, by agreement of said bank and King, the said King was entrusted with said receipts as agent of said bank to sell cotton as evidenced by said receipts, and which were of a value of more than fifty dollars, which receipts were the corporeal personal property of and belonging to said bank, and which was delivered to the said King by said bank for the purpose of sale in order to liquidate said notes, and *said cotton* was on said day sold by the said King under said agreement, and said proceeds came into the possession and was under the care of and possession of the said King

by virtue of his agency and agreement with said bank as aforeaid, and the said King, without the consent of the said bank, did then and there unlawfully and fraudulently embezzle, misapply and convert to his own use said money," etc.

We have endeavored to analyze and determine the legal effect of these allegations. The latter part seems to charge appellant with the misappropriation of certain money,—not further described than to say same was over fifty dollars, resulting from the sale of cotton, which cotton is nowhere alleged to have been the property of the bank or by the bank delivered to appellant. As we understand it, however, it charges that three public weigher's receipts representing three bales of cotton were by agreement of the bank and appellant delivered to the bank as collateral security to certain notes owed by appellant and that such receipts were attached to the notes and *when sold the proceeds to be applied to the payment of said notes.* It is alleged that the receipts were the personal property of the bank and that they were delivered to appellant for the purpose of sale in order to liquidate said notes; and that the *cotton* was sold and its proceeds appropriated by appellant. Cotton weigher's receipts eo nomine are not known to our law. Public warehouse receipts are, and cotton weigher's certificates are. See Vernon's Complete Texas Statutes 1920, Arts. 7819-7827½, and Arts. 7828-7835. If we look to the allegations of this indictment we fail to find averments of any transfer of title to the cotton, the ownership of which is not alleged, nor is it stated that the title or possession thereof was ever vested in the bank or for that matter in appellant. There is no averment of the contents or legal effect of a public weigher's receipt or that possession of same was in anywise necessary to or could affect the right of sale of the cotton referred to in such receipt, if any. A public weigher's receipt might or might not be property, dependent, we would suppose, on its terms and the facts surrounding it, though the contents or conditions of the receipts mentioned in this indictment are nowhere set out. As we understand the provisions of Title 132, Vernon's Complete Texas Statutes above referred to, the party who has cotton, etc., weighed by a public weigher and for which a certificate is issued, does not have to leave same in the care or custody of such weigher but may take it home or any other place he sees fit. It also appears that by the amendment of 1919 a form for cotton weigher's certificate to be used by all such public weighers was to be prepared and issued by the commissioner of Markets and Warehouse.

The indictment referring to a receipt unknown to the law, and which is not set out, and having failed to allege that said receipts were sold by appellant and the proceeds arising from their sale appropriated by him; and having failed to allege that the owner-

ship of the cotton referred to was in the bank and that the bank was entitled to the proceeds of the cotton sold by the appellant, we are compelled to hold this indictment insufficient to charge a violation of the law. In such case we do not deem it necessary to discuss any of the other errors complained of by the appellant, nor to set out the facts.

The judgment will be reversed and the prosecution dismissed.

                                                                   *Dismissed.*